West Virginia CWP Fund Director, Office of Workers' Compensation Programs. Are the parties ready to proceed? Yes, Your Honor. All right, thank you. We'll hear first from Mr. Sokup. May it please the Court, Jeffrey R. Sokup for the petitioner, West Virginia CWP Fund. As the insurance carrier for the employer, which is Mountaineer Coal Development. The benefits review board, which is the appellate agency in Blackland Benefits case, held in a published en banc decision in 2008 that if an ALJ feels that there is an evidentiary problem, too much evidence, inadmissible evidence, etc., he has to notify the parties and allow them to argue for and against the evidences admissibility before deciding the substantive merits of the case. Unfortunately, ALJ sellers did not follow the rule set in this board Preston case, and I'm referring to it as the Preston case. Instead, without notifying the parties, without providing opportunity to argue the issue, he excluded a prior medical report authored by Dr. Donald Rasmussen while simultaneously deciding the award of benefits in this case. Why didn't the employer make a good cause argument? The employer had four months to do so and apparently elected not to. Well, part of the problem here was the procedural history in this situation. No question, but the employer still did have the right to make a good cause argument for the inclusion of the information. Well, two responses to that. First of all, a good cause argument actually was made in the course of the deposition of Dr. Rasmussen, and I can point you to that if you'll permit me. Right, but regarding the admission of the evidence, why wasn't the ALJ put on notice that you were arguing that there was good cause to include this in the record? Well, again, first of all, I believe he was put on notice by the statement of the deposition. And secondly, It's not a motion. How would the ALJ know about that? It doesn't have to be brought into motion. And actually, in the Preston case itself, it clarifies that it's not incumbent on the employer to make a good cause argument until the ALJ feels that there's a problem with the evidence's admission. And in this case, it was not even pointed out to the parties until after the ALJ, well, not after, but during the course of the ALJ's decision that he felt there was a problem with the admission of the Rasmussen report. Right, but you didn't even ask for reconsideration of the ALJ's determination to exclude the 2009 materials, did you? No, but we're not required to ask for reconsideration. No, I'm not saying that you are, but I'm saying that there were vehicles to express your disagreement in front of the fact finder, and you just elected not to, to ride it out. Isn't that correct? Well, we chose to preserve it as an issue for appeal because we thought that the board's Preston case was absolutely controlling in this situation. And I would submit that it is. Preston itself, much like this case, has a very long and complicated procedural history. But what ultimately happened in the board's en banc decision, among other things, and if you will permit me, I can read from the case. It's just a paragraph. The court held there that consistent with the principles of fairness and administrative efficiency that underlie the evidentiary limitations, if the ALJ determines that the evidentiary limitations preclude the consideration of proffered evidence, which the ALJ sellers felt that happened here. But did you actually move to admit the medical evidence, the 2001 materials? When the deposition... When did the record show that you moved to have those admitted as part of the record? In the deposition, my co-counsel... Could you give us a reference? Yes. And come back on rebuttal. You don't need to take your time now. Okay. I'll just state very quickly. In the deposition, it was attached as an exhibit to Dr. Rasmussen's report because that's where it was first came into being, or when the parties first learned about it. The ALJ wasn't put on specific notice anywhere through in these proceedings. Isn't that correct? No, I don't think that's correct. I think he was put on notice when there was a long discussion between the parties in the course of the deposition about the admissibility of the report. And he clearly read the deposition because he quoted from it and described it in his report. So I think that is more than sufficient to put him on notice. I'm just wondering whether maybe we're arguing about something that's not really an issue because don't we have a harmless error situation here perhaps? I mean, I'm just making the point and I want to hear your response. Because Dr. Rasmussen, as a result of the 2009 materials, when he realized that he had seen Mr. Smith earlier, he said, well, I can no longer reach a definitive conclusion either way. And that wouldn't be sufficient to rebut the presumption. So maybe we're arguing about something needlessly. With respect, I disagree. I think what you were referring to is, it's Joint Appendix 216, and that's page 34 of his deposition. This is the part I think you're referring to that because that's the part that ALJ quotes. And there, when Dr. Rasmussen is questioned about that, Dr. Rasmussen says, I would not necessarily believe I could say his coal mine dust was really a significant co-contributor but couldn't rule it out. The problem, the problem, if you'll permit me, is that on the very next page, when Dr. Rasmussen is further questioned about this causal connection, and this is the part that ALJ does not discuss and why it's not harmless, my co-counsel, Mr. Manley, asked Dr. Rasmussen the following. So within a reasonable degree of medical certainty in Mr. Smith's situation, can you state that he has a disease including any chronic respiratory or pulmonary impairment significantly related to or substantially aggravated by his dust exposure from coal mine work that tracks the definition of legal pneumoconiosis? What page are you on? Sorry. I apologize. It's Joint Appendix 217. Right. And Dr. Rasmussen, can I just finish that part of it? Dr. Rasmussen answers, I cannot state it like that. Exactly. He can't. But that's not what's required to defeat the presumption under Hobit Mining. When you look at Hobit Mining at 502, it's very clear. You defeat the miner's claim by rebutting either of the two presumptions. You have to have an affirmative statement that the miner does not have pneumoconiosis arising from coal employment or that no part of the miner's disability was caused by such disease. So you have to make an affirmative showing per Hobit Mining in order to rebut the presumption. And Dr. Rasmussen's testimony simply left the issue in equipoise. It was an affirmative testimony saying there was no correlation. He simply said, I can't say. That's not quite. Okay. Tell me why that's wrong. If a doctor said, if a, if a, here we have a disease that's defined by regulation. Okay. So if a doctor is given the definition of regulation and is asked, can you, can you diagnose a disease that meets that regulation? Which is what was asked. And he says, I can't. Right. That is the equivalent of an affirmative showing that he doesn't have the disease. I mean, then what is the presumption for? That's how presumptions work. You don't actually have to show it. We presume it unless the employer can rule it out. And on the prior page, on page 216, he says, I can't rule it out. I cannot rule out coal mine dust as a significant contributor. Well, first of all, the rule out standard, which you're referring to applies to the second waiver. He's using, I've done a whole case on this. He's using rule out colloquial, colloquially. And in fact, the employer does have to, colloquially speaking, rule out coal mine dust as a significant contributor. And right here, you've got Dr. Rasmussen saying, I can't do that. He has to, we have to rule out coal mine dust as a significant contributor to impairment, not to the disease. That is a separate presumption. And there is a case from this court, which is the Bender case, West Virginia v. Bender, which states that there is a difference between the two rebuttal standards on the two causal prompts. Here, and I should add that if we're only going, if all we're doing is looking at one page of his deposition, that's not what we should be. I'm looking at all the pages. I'm looking at 217, where as you point out, he can't affirmatively diagnose it, but I'm still not understanding why that's not what a presumption is for. The presumption shows that we have to, that the employer has to present evidence showing that allele pneumoconiosis is not present and not diagnosed in this case. If you read Dr. Rasmussen's testimony- He has to negate the existence. Isn't that correct? By proving that he doesn't have it. Yes. Right, exactly. I, I submit to you, it's not reasonable to read this statement as saying anything other than saying that I don't believe he has the disease within the definition set by the regulation. I mean, that's the plain meaning of saying, I can't state that he has a If you can't say he doesn't have the definition of the disease, he doesn't have the disease. So that's your, that's your best argument then you're saying? Well, that's one of my arguments for why this is- Because you've got to rely on Dr. Rasmussen to rebut the presumption, don't you? Because the board affirmed, and you're not challenging the fact the board's finding that Drs. Rosenberg and Spagnola provided insufficient testimony as a matter of law to disprove the legal pneumoconiosis, right? I am not- The board, the board discounted their testimony and said it wasn't, it wasn't sufficient. I mean, the ALJ, the board said you haven't challenged the ALJ's finding that Spagnola, let me make sure I get these names right, Spagnola and Rosenberg provided insufficient testimony to rebut the presumption. So really your case rises and falls on your Dr. Rasmussen argument that you just made to us, doesn't it? I'm not challenging the reasons that the ALJ gave, the specific reasons that the ALJ gave for discrediting Rosenberg and Spagnola. One wrinkle to that- Well, I'm saying you can't resurrect them now in support of your argument, can you? Well, but one wrinkle of that, though- Well, could you answer the question, though? I'm trying to answer the question, Your Honor. Yeah. Can you resurrect, can you bring before us again Rosenberg and Spagnola in support of your argument that you have rebutted the presumption when the ALJ found, and you did not challenge, that their testimony was insufficient to rebut the presumption? Are you saying you can use their testimony now? I cannot use Spagnola's testimony for the reasons you said. With respect to Dr. Rosenberg, the only difference is that Dr. Rosenberg also considered the 2009 Rasmussen report, and that was not ruled on by the judge except to the extent to say that, well, because the 09 report is not of evidence, I'm not going to consider Rosenberg's testimony. That particular point is unconnected with the reasons that the ALJ gave for discrediting Dr. Spagnola's report, excuse me, Dr. Rosenberg's report. So to that extent, no, I believe that Dr. Rosenberg's report to the extent, but only to the extent that he relies on the 2009 Rasmussen report, that also can support rebuttal in this case. Unlike to a limited extent with Dr. Rasmussen, the judge did not address the impact of the 09 report on Dr. Rasmussen's testimony. He said that Rosenberg is not credible because he relied too much on the presence of clinical pneumoconiosis. I don't challenge that, but that is unconnected to the reliance that Dr. Rosenberg had on the excluded evidence. So, no, I don't think it necessarily rises and falls on Rasmussen, as you said. It does in good part, but not entirely. The problem here, again, this all goes back to the exclusion of the report. Now, you you But let me ask you, just backing it up just a little bit more, this case is all about whether the presumption was rebutted, isn't it? Yes. Okay. Go ahead, then, please. And to that point, the presumption is rebutted in large part by Dr. Rasmussen's testimony. One thing that the claimant raises in his brief is that we can't rebut the presumption because, as you largely pointed out, because our experts were discredited. That is not so because Dr. Rasmussen, when considering the 09 report, largely changed his diagnosis and, I would submit, found that legal pneumoconiosis cannot be established in this case. If that's so, that is direct evidence that goes towards rebutting the, what I'll call the first prong of the presumption, which is presence of legal pneumoconiosis. When that is considered, I think it's the only, I don't think reasonable minds can really dispute that what Dr. Rasmussen is saying is that within the definition of legal pneumoconiosis, I can't diagnose it any longer when I consider this past report. So it is not harmless error because it plays a great role in explaining why the facts of this case show that legal pneumoconiosis is not present. Mr. Sukup, can I ask, so in a typical case without this earlier report from Dr. Rasmussen, are you saying that the way to rebut the presumption would have been precisely the way the question was asked of Dr. Rasmussen in that page that you cited, 217? Do you understand my question? You mean asking him the definition and whether he feels it could be done? A reasonable degree of medical certainty. If your experts had put aside the fact that you've got this report from Dr. Rasmussen, if your, and I don't recall how the questions were framed to your experts, but if they were framed in that way, are you saying that that would have been enough to rebut the presumption? I think it's just another way of saying he doesn't have the disease, yes. I don't think it's material about whether the doctor comes out and says, yeah, I look at this, I can definitely say he doesn't have it, as opposed to saying you've quoted me the definition of legal pneumoconiosis, I understand it, I can't say that he has a disease that meets that definition. And that's functionally what Dr. Rasmussen is saying. So yes, I think in a typical case, to answer your question, that would rise to the level of rebuttal evidence. Does that address your question? Yeah, I think the question is whether or not we agree with that. Right, that's why we're here, but I would submit that it does. And along that point, the ALJ does address part of this, and the problem is, as I hinted at before, he only addresses one portion of Dr. Rasmussen's testimony where he uses the, Judge Harris, as you said, the colloquial rule out language. And yes, if you look at that one passage, I agree that makes it look a little equivocal. He says, I can't say one way or the other. But if you look at his entire testimony in full, as I think an ALJ is supposed to do, I don't think you can read this any other way than he is saying, I don't agree that he has legal when I consider this past report. Yeah, I feel like what he said was, tell me where I'm reading the record wrong. Sure. Before I looked at my past report, I was prepared to say, this is all about the coal dust. Now that I'm looking at it, I'm saying, I can't affirmatively say it was about the coal dust, and I also can't rule it out. I would agree that if you just look at page 216, then that's the answer. I feel like that's basically the thread that ties together all the things he says about this on page, hang on, on page 206, on page 216, page 217. Like, they all fit together that way. I guess I would just submit that I take a different view of this. I mean, it's, I don't think it's material, but Weber comes out and says, yeah, I affirmatively say it's not about coal dust. Because it's a way of, an interesting thing about this is here we are dealing with a disease that, while it's real, it's also defined by regulation. So if a person is, if a person is asked what's, you know, quote of the definition, they say, I can't say that he has a disease that meets the definition. I mean, that's, to me, that's the same as affirmatively saying he doesn't have the disease. Let me get. And I think it might be in other contexts, but where there's a presumption in place, it seems like that makes all the difference in the world. He doesn't have to say it because the presumption already puts it there. The only thing he can do is rebut the presumption. Do you see what I'm saying? Like, I totally get that in normal discourse, those two things seem very similar. But what makes them, I think, very different is when you have a presumption in place. I understand. And my time is up. Can I respond to your question briefly? The presumption here, though, if we were, if I was still trying to argue this as a case of whether he can rule out coal dust as the cause of his disability, I think you're right. Because there we have a very exacting rule-out standard. It is very different from the standard that applies to whether you have to rebut the presence of legal pneumoconiosis. You have to show it's not a significant contributing factor, right? Are you talking about disability causation? I'm talking about showing that it's not legal pneumoconiosis. You have to prove by preponderance of the evidence that coal mine dust does not significantly contribute or substantially aggravate a disease, a lung disease. And that's why Mr. Mattingly asked the question, as he did, because he's trying to track that definition. And Dr. Rasmussen says, no. I mean, I think that is an affirmative statement. I mean, perhaps Dr. Rasmussen could have said, yes, I affirmatively agree he doesn't have it. But functionally, that's the same thing. And if there are more questions, I'll sit down. Thank you. Okay, Mr. Staten, please. May it please the court. I'm Leonard Staten, appearing today on behalf of the respondent, Lonnie Smith, who worked in the coal mines for 31 years. The appropriate question to answer in this case is whether, if the administrative law judge had admitted Dr. Rasmussen's 3-1609 report, the admission of that report would have changed the final outcome of this case. And my position is that no, it would not have changed the outcome. The employer does not contest the fact that the miner filed his claim after January 1, 2005. He had 31 years of coal mine employment, of which at least 15 were qualifying. And he had a totally disabling pulmonary impairment, such that the presumption was invoked. Thus, the burden fell on the employer to prove that the miner's coal mine dust exposure was not a significant cause of his pulmonary impairment. The employer has acknowledged by not raising any argument concerning the opinions of Drs. Rosenberg and Spagnuolo, that their opinions are insufficient to carry its burden. Thus, as Judge Keenan notes, this case turns on whether the administrative law judge permissively found that Dr. Rasmussen's opinion does not establish the absence of legal pneumoconiosis. The administrative law judge noted that Dr. Rasmussen, when discussing his previous 3-1609 report, said he did not necessarily believe that he could say that coal mine dust exposure was really a significant contributor, but he stated that he could not rule it out. Dr. Rasmussen, the administrative law judge, interpreted this statement to mean that although Dr. Rasmussen said that he did not have sufficient data to say that coal mine dust exposure is a significant contributing factor, likewise, he was saying that he did not have sufficient data to say that the coal mine dust exposure was not a significant contributing factor. The administrative law judge noted that Dr. Rasmussen, at pages 197 through 198 of the appendix, stated that he believed that both the miner's coal mine dust exposure and his collagen vascular disease could cause the interstitial fibrosis, which had likely caused Mr. Smith's gas exchange impairment, resulting in a totally disabling pulmonary impairment, and without pathology evidence, there is no way to tell which factor had caused the interstitial fibrosis, resulting in Mr. Smith's gas exchange impairment. Mr. Staton, so when your learned friend on the other side of the table there says, look at page 217 of the joint appendix when Dr. Rasmussen is asked, so within a reasonable degree of medical certainty in Mr. Smith's situation, can you state that he has a disease, including any significantly related to or substantially aggravated by his dust exposure from coal mine work? And he responds, I cannot state that. Is that at all inconsistent with what you just told us? No, that goes back to what Judge Harris has stated. It is the employer's burden to affirmatively establish that the miner's coal mine dust exposure is not a significant factor. Merely saying that he does not, he cannot say it is a significant factor does not mean that he is saying it is not a significant factor. If you could ask me if I knew whether you had eaten breakfast this morning, and I said, I don't know, that would not establish that you had eaten breakfast, but it also would not establish that you had not eaten breakfast. It would just mean that I don't know. Well, but Mr. Sukup says this is the way the question is always asked in these contexts. No, I don't agree with that because it's the employer's burden to establish that he does not have, or that the coal mine dust exposure did not significantly contribute. So just saying that it did not substantially contribute, or saying does not mean that it necessarily did contribute, it's up to the employer, that's the virtue of the presumption. It's up to the employer to affirmatively establish by probative evidence that the coal mine dust exposure was not a significant contributing factor to the miner's pulmonary impairment. Defendants' experts have been asked that same question in that same way, and I don't recall how they were asked about what was the cause in this case. That would also be insufficient. Well, no, because normally, and in this case, I think both of them was the cause of the miner's pulmonary impairment without any contribution from the coal mine dust exposure. So, of course, the employer has not argued their evidence in this case, but no, they specifically stated that the collagen vascular disease was the affirmative cause, not the coal mine dust exposure. Right, but I'm asking you, if they had simply been asked this question and they had answered that question in the same way, that wouldn't be enough, right? No, if they just said that coal mine dust exposure was not a substantial contributing factor, they would still have to come back and say, well, if they were asked if it was a substantially contributing factor and they said no, that doesn't necessarily mean that they were saying that it did not significantly, well, kind of wrap myself around. I'm just wrapping you around, confusing you. I think you've answered. Okay, thank you, Your Honor. What about the procedures here, Mr. Staton? As far as the evidence submission, okay. And, you know, I think Mr. Sukup makes a fair point that why should we simply process this appeal? Wouldn't it be better for him to send it back? Well, I realize that Dr. Rasmussen has passed away. Well, first of all, I disagree with his characterization of the introduction of the 316.09 report at the deposition as being a good cause motion. If you look at pages 217 to 218 of the Joint Appendix where Dr. Rasmussen testified, the only matter in which the report was introduced was that Mr. Sukup's co-counsel said- He just says it opened the door for me to ask questions about. Right. He just said, you know, let's attach it as an exhibit. He doesn't say there was a good cause. I want to address Preston in just a moment, but I think this case is kin to the case of Brashear, which was cited in our briefs. In that case, there was evidence submitted in excess of the evidential limitations, and the employer did not file a good cause motion, and the judge excluded it. The employer then filed a motion for reconsideration, and the judge denied that, and he said, it's not my duty to point out to you when to file a motion to get evidence introduced into the record. Under the evidentiary limitation rules of 725.414, those rules are construed, as the board pointed out in Brashear, the parties cannot waive those rules, so unless the evidence specifically fits into those slots on the evidentiary limitation rule, the party is required to make a good cause argument under 725.456B1 to have that evidence introduced. Now, the employer relies heavily on the case of Preston v. Brashear, and that case is significantly different from this case. In that case, when the judge considered the excluded evidence, he denied benefits. On remand, when he did not consider the excluded evidence, he awarded benefits. The board held, therefore, since we had diametrically opposite results when the evidence was considered or not considered, the evidence in question was material to the case. Now, in this case, the judge said, whether I consider that evidence or not, I'm still going to award benefits. The board said, under the facts of this case, we find that the judge did not err in excluding the 316.09 report, thereby agreeing with the administrative law judge that the 316.09 report was not material to the outcome of the case. So it was incumbent. Can I ask you just a question? Yes. Would you concede that had a good cause motion been made, and I understand your argument is that one wasn't made and nor was the equivalent of one made, but that if there was a good cause motion made, would there have been good cause to put it on the record? To put this report on the record? I mean, it did very substantially affect Dr. Rasmussen's thinking. If the argument had not been waived by not being timely raised, yes, I believe likely it would have been. But then, of course, I come back to my initial argument, is that it would make no difference because the judge found it not to be material, as he said, that he would have awarded benefits regardless. And as I've noted, it is incumbent upon the parties seeking to have evidence introduced to take the appropriate steps to have that evidence introduced. As the panel has pointed out, the employer filed no motion requesting that the evidence be admitted into evidence and, in my opinion, did not raise a good cause argument. Now, while this case was before the board for the first time, the employer raised the argument that, well, the evidence is not really in excess of the limitations because we had open spots on both the section on pulmonary function studies and arterial blood gas studies where we could have entered just the objective testing consisting of the pulmonary function studies and arterial blood gas studies from the 3-1609 report. But, as I've stated, that argument was not raised until this case was in front of the benefits review board. So, in my position, that argument was waived. It is well settled to appellate law that if an issue is not raised before the trial court, that issue is waived and cannot be thereafter brought up before an appellate court. So, in my position, the employer waived its argument by not timely either requesting redesignation of its evidence by substituting Dr. Rasmussen's report for either Dr. Rosenberg's or Dr. Spagnuolo's report, requesting leave to submit just the objective testing in the open slots or make a good cause argument. So, in conclusion, I believe I've pretty well addressed my arguments and you've raised pretty much the points that I was going to ask. I believe that the administrative law judge did not abuse his discretion in excluding the 3-1609 report in light of the fact that the administrative law judge, as affirmed by the board, found the report not to be material to the outcome of the case as opposed to the ruling of the benefits review board in Preston. Therefore, I would respectfully request that this court, as did the benefits review board, affirm the administrative law judge's award of benefits. All right. Thank you, sir. Mr. Sukup? Your Honor, the briefs somewhat colorfully referred to the situation of the dog that doesn't bark from the Sherlock Holmes case. And that was raised because, well, Mr. Staten raised it first, but it was raised in reply because nobody addressed the Preston case. That's significant. It was only now talked here, very briefly, by Mr. Staten about why Preston doesn't apply. And there's no convincing reason to accept that. Preston was the more recent of case, not Brasher. Brasher was 2006, which he relies on. Preston was 2008. Preston was en banc. Brasher was a panel decision. The thing about waiver, waiver was settled by Preston because if a good cause argument was waived here, it was waived in Preston also. There too, the evidence that was initially excluded and then brought in, then excluded again. At no point was any good cause argument made by the employer in Preston that this deposition should be brought in. The judge decided that on his own tandem. And that's why at the end of the Preston case, the board held, as I quoted before, that if an ALJ is going to decide that he wants to kick evidence out of the case, he has to notify the parties ahead of time. And at that point, the requirement of pleading good cause or some other reason to get it in, that's when that duty comes into play. Not before, only then. I think at that point, if an employer fails to exercise the opportunity after giving notice to make a good cause argument, then perhaps it can be waived. But that wasn't the case here. Here, this is a situation where even the very existence of Dr. Rasmussen's prior report did not come into play until after the evidentiary hearing before the ALJ, when the claimant took Dr. Rasmussen's deposition. Dr. Rasmussen disclosed, by surprise of the employer at least, that he had this previous report. And because of that, he needs to amend his testimony to say that he can no longer diagnose legal pneumoconiosis within the definition of that term. At that point, I would submit the employer made a good cause argument during the deposition when it was attached, even though, as I stated, under Preston, they don't have to do that until the ALJ feels that there is a problem. And because of that, this medical report should have been considered. At the very least, the data from the medical report, the arterial blood gas studies and the pulmonary function studies should have been considered as well. And just to get back to the point about the harmless error that we talked about quite a bit, again, I think this is not a harmless error because the ALJ fails to reconcile what I feel are conflicting problems, not problems, but conflicting statements within Dr. Rasmussen's position. If you only look at the one page that Judge Harris, you and I were talking about, yes, it can be seen as equivocal because he uses the rule-out language. However, if the ALJ had at least addressed the other page of his report in which he says, no, I can't diagnose a disease that meets that definition, that is rebuttal evidence. I mean, to me, that is clear-cut rebuttal evidence. He doesn't have to say the word affirmative. He can say that you don't have a disease that meets the definition that the DOL enacted. I think that rises to the level of rebuttal evidence. To use an analogy, I mean, if you, let's say lung cancer is defined by a three-centimeter nodule in the lung. I mean, it's not, I'm making this up, but I mean, if that's the definition of cancer and you ask a doctor, do I have a three-centimeter nodule in my lung? The doctor says, no, you don't. If that's the definition of lung cancer, that's the doctor saying you don't have lung cancer. It stretches the bounds of reason to say that the doctor is only not diagnosing lung cancer. He takes an additional step and says, by the way, that means I believe you don't have lung cancer. To read it any other way is just not reasonable. And just that one final point on that same issue, Mr. Staten kind of waffled a little bit on whether, you know, the, whether Dr. Astman had said this, this, and this, or if Dr. Rosenberg had said this, this, and other way, that might have risen to the level of an affirmative statement. I think Mr. Staten's confusion says quite a bit because this is how one either affirmatively diagnoses or does not affirmatively diagnose a disease that is defined by a regulatory definition. You talk about the definition and you ask the person, does he have a disease that meets that definition? If he says no, or if I can't diagnose it that way, that's the same as an affirmative statement. It's just another way of putting it. Judge, if there are, judges, if there are any more questions, I will answer them. If not, I'd like to close. All set. Thank you. No, thank you very much. Thank you, Your Honors. Bless the clerk to close court and we will proceed to, down to Greek Council afterwards. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Barbara Milano Keenan, Albert Diaz, Pamela A. Harris